CARLOS R. ROSSI, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

Nos. 71 and 85.    Argued March 18, 1946.—Decided July 16, 1946.

James R. Beverley, R. Castro Fernández, Carmen B. Hernández, and José López Baralt for petitioner. E. Campos del Toro, Attorney General, and J. B. Fernández Badillo, Attorney of the Department of Justice, for intervener Treasurer of Puerto Rico, respondent in the main proceeding.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

For the purpose of paying the tax on the personal property which he had in his business on January 15, 1944, the petitioner presented an inventory to the Treasurer of Puerto Rico on May 29 following, which discloses that, in his opinion, the value of said property is as follows:

| | |
|---|---|
| "Stock | $44,087.16 |
| "Furniture | 2,237.20 |
| "Machinery | 478.20 |
| "Cash on hand | 20.85 |
| "Total | $46,823.41" |

On July 11 of the same year the Treasurer notified petitioner that his property had been appraised thus:

| | |
|---|---|
| "Stock on January 15, 1944 | $64,000.00 |
| "Furniture January 15, 1944 | 4,200.00 |
| "Machinery January 15, 1944 | 1,400.00 |
| "Cash on Hand January 15, 1944 | 20.00 |
| "Cash Deposited in Bank 1944 | 15,000.00 |
| "Total | $84,620.00" |

The petitioner appealed to the Tax Court in a complaint filed on November 21, 1944, and challenging the appraisal of the Treasurer he alleged that the same was unfair and unjust because the value of his property on January 15, 1945, was as stated in said return and not as declared by the Treasurer, and as to his bank account he alleged that it amounted to $603.55, and that the Treasurer had unlawfully and arbitrarily appraised it in $15,000 and that said account was not subject to tax pursuant to § 290 of the Political Code. Petitioner further alleged that on November 10, 1944, the Treasurer notified him that he had levied a tax on said property amounting to $2,420.14 according to the appraisal which he had notified him on July 11, 1944. That on November 14, 1944, he paid the amount of $1,339.15, which was the correct tax according to the value stated in his inventory and attached to the complaint the provisional receipt issued by the Collector of Internal Revenue, offering to file with the record the final receipt as soon as it were delivered to him.

At the hearing held before the Tax Court, petitioner testified as his only witness. The complaint was dismissed except as to the amount of $603.55 that the petitioner had

deposited in the bank on January 15, 1944, which amount was declared exempt from taxation, but the court ordered that the amount of $20.85 which he had on hand at that time be taxed.

■■ The present proceeding was instituted in this court on November 21, 1945. The first question raised by the Treasurer is that the proceeding is premature because at the time of its filing the Treasurer had not presented any computation and, consequently, the Clerk of the Tax Court had not notified the decision; and further because payment had not been made under protest.

It is unnecessary to decide this question in the present case, inasmuch as the Treasurer, on March 7, 1946, filed the computation of the tax owed, which was approved on the 11th of the same month and year and on March 14 of said year the petitioner paid under protest the balance of the tax amounting to $658.51, whereupon he filed on April 10 following a second certiorari petition to which he attached the receipt of the payment under protest, in the event that it should be decided that the first petition had been filed prematurely. Under these circumstances, assuming that the first petition was prematurely filed, the second petition, filed on time, cured said defect. Since at the hearing held on March 18 last petitioner announced that he would timely present a second certiorari petition, which, as we have said, was filed on April 10 last, and it being stipulation at that time by the parties that the case be decided on the proper petition, as the records are here and the case has been submitted, we do not see the need of deciding the question raised, nor of remanding the case to the Tax Court in the event that the first petition was prematurely filed.

As may be seen, there is a wide difference between petitioner's appraisal and the one which the official assessor alleges to have made. It appears from petitioner's testimony that the assessor went two or three times to his establishment

in order to make the appraisal but due sometimes to the untimely hours chosen, and other times to the work of petitioner and his employee, it was agreed by the petitioner and the assessor to postpone the appraisal to some other time. Finally the assessor did not come on the agreed date but called on another occasion at 11:45 a.m., at which time the petitioner was about to close his establishment. The assessor was asked to return on that same day at 2:00 p.m., but he replied that he could not come again and subsequently, without returning to the establishment or asking for any information whatsoever, he prepared the appraisal copied above.[1] Petitioner's testimony was not contradicted by the assessor who was present at the hearing before the Tax Court. The Treasurer invokes the presumption of correctness which is attached to his appraisal and, relying on *Mayagüez Sugar Co. v. Sancho, Treas.*, 64 P.R.R. 699, he contends that the presumption has not been destroyed by petitioner's evidence in the present case. The Tax Court agreed with him and, based on said contention, it rendered the decision sought to be reviewed. In our opinion, the appraisal of the Treasurer is untenable. In the *Mayagüez Sugar Co.* case, *supra,* there was a true assessment. The assessor stayed at the sugar factory and made the corresponding appraisal. This assessment had the presumption of correctness and we then said: ". . . the appraisal *made by* . . . the officers in charge of the assessment of the property is presumed to be correct and it is incumbent on the taxpayer who challenges the same to show by persuasive evidence that the assessment is so excessive as to be unjust and confiscatory, and he should show to the court what is the reasonable market value of the property." (Italics ours.)

---

[1] We must add that for taxation purposes in this case, it was not indispensable for the assessor to go personally to the establishment. He could have based his appraisal on the inventory presented by the taxpayer if he believed it to be correct. There is no showing that he based his assessment on any inventory.

But in the present case it was conclusively established that the assessor, upon being disappointed because he was asked to do the work at a reasonable time, did not return to petitioner's establishment, and without having any information on which to base it, prepared the assessment.[2] This is not a case, therefore, of an excessive, unfair, or confiscatory appraisal. It is merely a nonexistent appraisal. Since no valid assessment exists on the part of the Treasurer, the tax based on the alleged assessment is void.

The decision appealed from must be set aside and the case remanded to the Tax Court of Puerto Rico for further proceedings not inconsistent with this opinion.

---

[2] The fact that on January 15, 1944, petitioner's bank account amounted only to $603.55 while the assessor stated in his report that it amounted to $15,000, clearly shows the lack of any ground for said assessment, for his bank account could have been easily and correctly determined by the assessor by obtaining the information from the bank.